Filed 1/29/25  Ghulam v. East Eagle CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| EZATULLAH GHULAM, | C099559 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-00323102-CU-BC-GDS) |
| v. | |
| EAST EAGLE, LLC, | |
| Defendant and Respondent. | |

Plaintiff Ezatullah Ghulam sued defendant East Eagle, LLC, (East Eagle) for breach of contract, breach of fiduciary duty, an accounting, and appointment of a receiver.  East Eagle demurred, arguing all causes of action were barred by res judicata because they were asserted in a prior lawsuit between the parties.  The trial court sustained the demurer without leave to amend and entered judgment dismissing the complaint with prejudice.  Ghulam appeals, and we affirm.

1

## BACKGROUND

Because we are reviewing a judgment of dismissal following the sustaining of a demurrer, we take the facts from the allegations in the complaint, and we assume those facts are true. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.) We also consider judicially noticeable facts, which in this case includes the complaint filed in the prior lawsuit and the judgment of dismissal.[1] (*Haro v. City of Solana Beach* (2011) 195 Cal.App.4th 542, 546; *Flores v. Arroyo* (1961) 56 Cal.2d 492, 496.)

### *The Partnership Agreement and Its Alleged Breach*

In early 2015, Mohammad Aalemkhiel (Mohammad) approached Ghulam and suggested they open and operate an Afghan restaurant and grocery store in Sacramento. They agreed they would each contribute half of the starting capital and their labor and they would split the profits equally.

Ghulam's brother, Zinatullah Gelaman, lived in the United Kingdom. The brothers agreed Gelaman would contribute the starting capital to the business and Ghulam would contribute the labor.

Ghulam and Mohammad originally agreed to create a new limited liability company (LLC) to run the business, but Mohammad later informed Ghulam it was unnecessary to create a new LLC because he already operated an LLC named East Eagle, and he would simply add Ghulam and Gelaman to East Eagle. At some point, Mohammad told Ghulam that his wife, Shakhofa, was the sole owner of record of East

---

[1] Both parties have asked us to judicially notice various documents filed in the prior lawsuit (although some were already filed in the trial court, and there is thus no need for us to judicially notice them on appeal). These documents are all "[r]ecords of . . . any court of this state," and are thus judicially noticeable pursuant to Evidence Code section 452, subdivision (d). The parties contend the documents are relevant to the issue of whether Ghulam should have been granted leave to amend. We grant both parties' requests for judicial notice.

Eagle "in an effort to ensure that Mohammad remained eligible to receive . . . monthly . . . medical leave payments from his former employer."

A partnership agreement was executed in March 2015 and a copy was attached to the complaint. It identified only two partners, East Eagle and Gelaman, and it did not identify or mention Ghulam. The agreement provided East Eagle and Gelaman would operate and manage the business, which would be known as East Market and Restaurant, and each partner "would provide their full time and overtime time services and best efforts on behalf of the partnership." Under "capital contribution," it noted "N/A" next to both partners' names. It provided East Eagle had a 51 percent share and Gelaman had a 49 percent share of the business, and profits and losses would be divided "according to a mutually agreeable schedule and at the end of each calendar year" according to those percentages. It provided Gelaman had the right to hire or dismiss any employee of the partnership with East Eagle's consent, and East Eagle had the right to hire or dismiss any employee without Gelaman's consent. Finally, it provided the term of the agreement was the period of the "rent contract of East Market and Restaurant . . . which is six (6) year and five (5) months" (i.e., from approximately March 2015 to August 2021).

As noted, the agreement provided both partners would "provide their full time and overtime . . . services . . . on behalf of the partnership." Because Gelaman lived in the United Kingdom "and thus could not complete these requirements on his own behalf, Gelaman enlisted the support of his brother [i.e., Ghulam] to satisfy these requirements, with East Eagle's full knowledge and consent. Accordingly, Ghulam provided fulltime and overtime services to the partnership."

Not long after the agreement was signed, Ghulam asked Mohammed when he and his brother would be added as members of East Eagle, and Mohammad said, "he could not add them as members until the County recognized and legitimized the Agreement." Also around this time, Mohammed said he would handle the business's finances and

3

banking, and "Ghulam and Gelaman agreed to Mohammad's proposal since they trusted Mohammad."

In October 2015, Ghulam again asked about being added to East Eagle, but Mohammad stated the business had "more pressing concerns" and they would have to wait.

In November 2015, Mohammad referred Ghulam to the Law Office of Maryem Muradi, and Ghulam and Muradi discussed the pros and cons of adding Ghulam and Gelaman as members of East Eagle and of creating a new LLC to operate the business. When Ghulam tried to raise the issue with Mohammad, Mohammad continued to state the business had more pressing concerns to deal with.

In March 2016, Ghulam paid Muradi's retainer with a check from the business, and Muradi proceeded to prepare the paperwork necessary to create a new LLC called Z&S Investments. About a week later, Mohammed asked Ghulam about Z&S Investments, and Ghulam stated Muradi's office was preparing documents and expected to receive articles of organization in two weeks. Mohammad then stated he would not sign any new LLC documents "because Ghulam was not his partner," and further stated if Ghulam or Gelaman "wanted to buy back into the business and sign a new agreement, they would have to purchase those interests at fair market value." The next day, Ghulam went to the business and found the locks had been changed and an employee told him "Mohammad had said he [i.e., Ghulam] was not allowed there and needed to leave the premises immediately."

### The First or Prior Lawsuit

Based on these allegations, in August 2016, Ghulam filed a lawsuit against Mohammad, Shakhofa, and East Eagle for fraud and breach of contract. Gelaman was not named as a plaintiff in the original complaint, the first amended complaint, or the second amended complaint, and the defendants filed various motions arguing (among other things) that Ghulam lacked standing to sue for breach of contract because he was

4

not a party to the partnership agreement. In May 2018, Ghulam filed a motion for leave to amend to add Gelaman as a plaintiff "given that [he] is a party to the written partnership agreement involved herein." The motion was granted, and in June 2018, the third amended complaint (the operative pleading) was filed, naming both Ghulam and Gelaman as plaintiffs. In the third amended complaint, Gelaman asserted causes of action against East Eagle for breach of contract, breach of fiduciary duty, and an accounting.[2] In support of his breach of contract claim, Gelaman alleged the existence of the partnership agreement and East Eagle's breach of that agreement by failing to distribute to him 49 percent of the profits generated by the business. The breach of fiduciary duty and accounting causes of action were based on similar allegations.

In July 2019, Ghulam and Gelaman were served with discovery requests, including requests for admissions. They were unrepresented at the time, "did not grasp [the] importance or potential repercussions of these requests," and failed to timely respond. The defendants filed a motion to deem matters admitted, which was unopposed and granted.[3] "These admissions include[d] admissions that [Ghulam and Gelaman] have no admissible evidence to support any of their claims against Defendants and no admissible evidence of damages." Based on these admissions, the defendants filed a motion for judgment on the pleadings, which was granted in January 2020. In February

---

[2] The third amended complaint also includes causes of action asserted by Ghulam for breach of fiduciary duty, an accounting, and various labor code violations, and causes of action asserted by Ghulam and Gelaman for various species of fraud, conversion, and unjust enrichment, but those causes of action are not at issue here.

[3] We note Ghulam and Gelaman could have moved for relief from the deemed admissions, but they did not do so. (See *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977-981 [party may move for relief from admissions deemed admitted due to failure to respond upon a showing of mistake, inadvertence, or excusable neglect].)

2020, the court dismissed the complaint with prejudice, and judgment was entered in March 2020.  No appeal was filed.

***The Current or Second Lawsuit***

Over two years later, in July 2022, Ghulam filed the current (or second) lawsuit against East Eagle.  The operative pleading is the second amended complaint.  In it, Ghulam alleges Gelaman assigned him all "rights, titles, and interests in any and all causes of action that Gelaman has against East Eagle arising under the [partnership] Agreement," he "files this Complaint not to re-litigate settled matters, but to pursue claims that have arisen since the date the previous action was filed," and, "As assignee of Gelaman's claims, Ghulam has a right to seek redress for claims . . . that have arisen since the filing of the previous action."[4]  He alleges the partnership agreement terminated by its own terms in August 2021, but East Eagle thereafter refused to provide an accounting or wind up the partnership, and he seeks an accounting (sixth cause of action) and the appointment of a receiver to wind up the partnership and ensure all accounts are correctly settled (seventh cause of action).  He also alleges East Eagle failed to distribute profits to Gelaman "every year since the end of 2016" as required by the terms of the partnership agreement, and he asserts five separate causes of action for breach of contract, each based on allegations that (1) East Eagle and Gelaman entered into the partnership agreement; (2) Gelaman assigned his claims under the agreement to Ghulam; and (3) East Eagle breached the agreement by failing to provide Gelaman with his 49 percent share of profits for the years 2016 through 2020.  The first cause of action seeks profits for 2020; the second cause of action seeks profits for 2019; and so on.  He also asserts six separate causes of action for breach of fiduciary duty based on similar allegations (i.e., that East Eagle breached its fiduciary duty to Gelaman by failing to pay

---

[4]     Ghulam is thus asserting Gelaman's claims against East Eagle as his assignee, and is not asserting his own claims against East Eagle.

him his share of the net profits at the end of each year from 2016 to 2020 and when the partnership terminated in late 2021.)[5]

### The Demurrer

East Eagle demurred to the current complaint, arguing it was barred by the doctrine of res judicata because it asserted the same causes of action that were asserted in the prior lawsuit; the prior lawsuit resulted in a final judgment on the merits; and Ghulam and Gelaman were parties to the prior lawsuit.[6]

Ghulam opposed the demurrer, arguing res judicata did not apply because the current lawsuit only asserted *new* causes of action that arose *after* the prior lawsuit was filed in August 2016. In particular, Ghulam argued the causes of action in the prior lawsuit all "arose from East Eagle's failure to pay out profits at the end of 2015," and the current lawsuit, in contrast, sought damages for East Eagle's "failure to distribute profits for the years 2016-2020 . . . and to wind-up the business at the expiration of the [partnership agreement] in 2021," none of which had occurred when the prior lawsuit was initially filed.

---

[5] A partnership " 'is a fiduciary relationship' " and "[i]t is hornbook law that in forming such an arrangement the partners obligate themselves to share risks and benefits and to carry out the enterprise with . . . the loyalty and care of a fiduciary." (*Enea v. Superior Court* (2005) 132 Cal.App.4th 1559, 1564.) Here, the breach of fiduciary duty causes of action are based on the same conduct as the breach of contract causes of action, i.e., Ghulam alleges that East Eagle breached *both* the partnership agreement *and* its fiduciary duty to its partner when it failed to pay Gelaman his proportionate share of the profits. The two causes of action are thus largely duplicative, and we analyze them the same.

[6] East Eagle also argued the issues raised in the current complaint were decided against Gelaman in the prior complaint, and relitigation of those issues is barred by the doctrine of collateral estoppel. The trial court did not reach this issue, and we do not either.

The trial court sustained the demurrer without leave to amend, finding the partnership agreement was not divisible and did not give rise to a new cause of action each year Gelaman was not paid his share of the profits. It also found East Eagle "repudiated the entire contract, not just part of it," in 2016, and Ghulam and Gelaman thereafter elected to treat the repudiation as an anticipatory breach and terminated the contractual relations between the parties by filing the prior action. It entered judgment in favor of East Eagle, and Ghulam filed a timely notice of appeal.

## DISCUSSION

### 1. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer, we review de novo whether the complaint states facts sufficient to constitute a cause of action under any legal theory. [Citations.] 'We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law.' [Citation.] In reviewing the sufficiency of the complaint, we may also consider matters that are subject to judicial notice." (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1218.) If the facts necessary to show an action is barred by res judicata are either alleged in the complaint or subject to judicial notice, the trial court may properly sustain a general demurrer. (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299.) "Because it is a question of law, we review de novo the trial court's conclusion that res judicata was applicable in this case." (*Association of Irritated Residents*, at p. 1218.)

" '[W]hen [a demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility

8

is squarely on the plaintiff.' " (*Association of Irritated Residents v. Department of Conservation*, *supra*, 11 Cal.App.5th at p. 1218.)

## 2.	*Res Judicata*

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).) " ' "The doctrine of res judicata rests upon the ground that the party to be affected . . . has litigated, or had an opportunity to litigate[,] the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation." ' " (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 575.) "Under this doctrine, all claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. ' "Res judicata precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief." ' " (*Mycogen*, at p. 897.) The doctrine "benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.' " (*Ibid*, italics omitted.)

"Res judicata bars the [re]litigation not only of issues that were actually litigated but also issues that could have been litigated." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1202.) Thus, " 'If the matter was within the scope of the [first] action, related to the subject-matter and relevant to the issues, so that it could have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters

9

which were raised or could have been raised, on matters litigated or litigable.' " (*Thibodeau v. Crum* (1992) 4 Cal.App.4th 749, 755, italics omitted.)

Res judicata applies "if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) The only issue raised in this appeal is whether the first requirement is met — i.e., does the present lawsuit involve the same causes of action as the prior lawsuit.

California courts apply the "primary right theory" in deciding whether two lawsuits involve the same causes of action. (See *Mycogen*, *supra*, 28 Cal.4th at p. 904.) " 'The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.' [Citation.] In particular, the primary right theory provides that a cause of action consists of (1) a primary right possessed by the plaintiff, (2) a corresponding duty devolving upon the defendant, and (3) a delict or wrong done by the defendant which consists of a breach of the primary right." (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589; see also *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 557 ["a cause of action consists of the plaintiff's primary right to be free from a particular injury, the defendant's corresponding primary duty and the defendant's wrongful act in breach of that duty"].) " 'The primary right must . . . be distinguished from the remedy sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief." ' " (*Mycogen*, at p. 904, italics omitted.)

" 'The primary right theory . . . is invoked . . . when a plaintiff attempts to divide a primary right and enforce it in two suits. The theory prevents this result . . . [because] if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata.' " (*Mycogen*, *supra*, 28 Cal.4th at p. 904.) Similarly, "A long-established rule prohibits the splitting of a single cause of action so as to permit successive actions on

parts of the claim. Hence, the first action on that single cause of action operates as a merger [or bar] even though the plaintiff is prepared in the second action (a) to present evidence, grounds, or legal theories not presented in the first action, or (b) to seek remedies or forms of relief not demanded in the first action." (Witkin, Cal. Proc. (6th ed. 2024) Judgment, § 435.)

### 3. *Analysis*

The first and second lawsuits in this case both contain similar (and in many cases identical) factual allegations describing the creation of the business, the partnership agreement, the operation of the market, and the parties' falling out. Both lawsuits and all causes of action asserted therein are thus based on the same operative facts. While we recognize that this is not dispositive (see *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954 ["Under the 'primary rights' theory," "the significant factor is the harm suffered; that the same facts are involved in both suits is not conclusive"], disapproved on other grounds in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4), we nonetheless find it is relevant, particularly where, as here, the second lawsuit asserts the same claims based on the same facts as the first.

For example, both lawsuits include a breach of contract claim or claims, and the basis of the claims in both lawsuits is the same — i.e., that East Eagle breached the partnership agreement by failing to pay Gelaman 49 percent of the business's profits, as required by paragraph No. 5 of that agreement. Both lawsuits thus allege breach of the same provision of the same contract in the same manner. Using the language of primary rights, both lawsuits seek to vindicate Gelaman's primary right to receive his share of the profits from the business as provided in the agreement; East Eagle's corresponding primary duty to divide profits as provided in the agreement; and East Eagle's wrongful act in breach of that duty. And, as noted above, this primary right is " 'indivisible' " and its violation " 'gives rise to but a single cause of action.' " (*Amin v. Khazindar*, *supra*, 112 Cal.App.4th at p. 589.)

11

The same goes for the breach of fiduciary duty and accounting causes of action in both lawsuits. The breach of fiduciary duty causes of action in both lawsuits (which essentially duplicate the breach of contract causes of action) are based on the allegation that East Eagle breached its fiduciary duty to Gelaman by failing to pay him his share of the profits, as required by the partnership agreement. And the accounting causes of action in both lawsuits seek an accounting of partnership monies so that Gelaman may calculate the profits he is owed under the partnership agreement that East Eagle has failed to pay.

Finally, although the first lawsuit did not include a cause of action seeking the appointment of a receiver, we find this is simply a different or additional remedy or form of relief requested to vindicate the same primary right that was asserted in the first lawsuit (i.e., Gelaman's primary right to receive his share of the profits from the business as provided in the partnership agreement). (Cf., e.g., *Hampton v. Rose* (1934) 3 Cal.App.2d 167 [receiver properly appointed in lawsuit alleging one partner excluded other from the business and appropriated and refused to account for partnership monies]; *Neider v. Dardi* (1955) 130 Cal.App.2d 646 [receiver properly appointed in action between joint venturers where the defendant excluded the plaintiff from participating in venture and from enjoyment of share of its profits].) However, "[t]he fact that [Ghulam] may be pursuing or adding a different remedy for the same injury does not create a new primary right." (*Hi-Desert Medical Center v. Douglas* (2015) 239 Cal.App.4th 717, 734.) "A mere change in the form of relief requested does not avoid the res judicata bar." (*Duffy v. City of Long Beach* (1988) 201 Cal.App.3d 1352, 1358.) "The primary right must . . . be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief.' " (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 682.)

Here, *all* of the causes of action in the current lawsuit seek various remedies for the violation of Gelaman's primary right to receive 49 percent of the business's profits,

and the violation of that primary right was also the basis for the first lawsuit.  It would thus appear that the current lawsuit asserts the same causes of action as the prior lawsuit, and that res judicata bars the current lawsuit.

Ghulam nonetheless argues the current lawsuit asserts different causes of action than the first.  He cites the rule that "[s]uccessive actions may be maintained upon the same contract . . . , whenever, after the former action, a new cause of action arises therefrom" (Code Civ. Proc., § 1047), and the related rule that " '[c]ontracts [that] require continuing . . . performance for some specified period of time . . . are capable of a series of "partial" breaches, as well as a single total breach by repudiation. . . .  For each "partial" breach a separate action is maintainable' " (*Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.* (2019) 36 Cal.App.5th 766, 784).  He then argues that because the partnership agreement specifies profits "shall be divided . . . at the end of each calendar year," a new and different cause of action for partial breach of contract arose at the end of each year profits were not divided.  In other words, if East Eagle failed to pay Gelaman the profits he was owed at the end of 2015, he had a cause of action against it for breach of contract (and breach of fiduciary, etc.); and if East Eagle again failed to pay him the profits he was owed at the end of 2016, he had a new and different cause of action against it for breach of contract; and so on.  Ghulam argues the first lawsuit, which was filed in August 2016, only sought profits owed at the end of 2015, and could not have sought profits owed at the end of 2016 or thereafter because those profits were not yet owed when the lawsuit was filed, and East Eagle had not yet breached the partnership agreement by failing to pay those profits.  (See, e.g., *County of Solano v. Vallejo Redevelopment Agency* (1999) 75 Cal.App.4th 1262, 1275 ["an actual breach of contract cannot occur until the time for performance has arrived"].)  The current lawsuit, in contrast, seeks profits owed at the end of 2016 and thereafter, and it is thus not barred by res judicata because it asserts new and different causes of action that arose after the first lawsuit was filed.  Ghulam frames the primary right at issue in the

13

first lawsuit as Gelaman's "primary right to be paid under the Partnership Agreement for the year 2015," and he frames the (multiple) primary rights at issue in the second lawsuit Gelaman's "primary rights to be paid . . . for the years 201[6]-2020."

Under Ghulam's theory, if East Eagle never paid Gelaman the profits he was owed pursuant to the terms of the partnership agreement, then Gelaman could file seven separate lawsuits against East Eagle for breach of contract, and a judgment in one of those lawsuits would not bar the others because they would all assert different causes of action based on different primary rights.[7] We are not convinced this is the law, because it would appear to violate the "long-established rule [that] prohibits the splitting of a single cause of action so as to permit successive actions on parts of the claim." (Witkin, Cal. Proc. (6th ed. 2024) Judgment, § 435.) If Ghulam's theory is correct, he could split his single cause of action for breach of contact into seven successive lawsuits, which would allow the very " 'multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration*' " that the doctrine of res judicata " 'seeks to curtail.' " (*Mycogen*, *supra*, 28 Cal.4th at p. 897.)

As noted above, even Ghulam acknowledges that " '[c]ontracts [that] require continuing . . . performance for some specified period of time . . . are capable of a series of "partial" breaches, as well as a single total breach by repudiation.' " (*Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.*, *supra*, 36 Cal.App.5th at p. 784.) The partnership agreement in this case was such a contract, because it required continuing performance over the length of its six year four month term. Ghulam contends East Eagle committed a series of partial breaches. The trial court disagreed, and

---

**7** The term of the agreement was approximately March 2015 to August 2021, so, according to Ghulam, a new cause of action for breach of contract would arise if profits were not paid at the end of 2015, 2016, 2017, 2018, 2019, 2020, and after the agreement terminated in August 2021.

14

found East Eagle committed a single total breach by repudiation.  According to the Restatement Second of Judgments, the doctrine of res judicata applies differently in these two different situations.  It provides as follows (we have added the bracketed numbers to make the ensuing discussion easier to understand):

> "**[1]** A judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action.  [Citation.]  **[2]** But if the initial breach is accompanied or followed by a 'repudiation' [citation], and the plaintiff thereafter commences an action for damages, he is obliged in order to avoid 'splitting,' to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract."  (Rest.2d Judgments, § 26, com. g.)

Although Ghulam does not cite the Restatement (neither party does), he effectively contends this case is governed by the first sentence — i.e., he argues the judgment in the first lawsuit for (partial) breach of contract does not preclude him from thereafter maintaining the current action for (other partial) breaches of the same contract that consist of the failure to render performance due after commencement of the first action.  The trial court, however, effectively found this case is governed by the second sentence — i.e., because East Eagle *repudiated* the partnership agreement before the first lawsuit was filed, Gelaman was obligated to claim all his damages with respect to the partnership agreement, prospective as well as past, and judgment in the first action precludes any further action by Gelaman for damages arising from the partnership agreement.  Although no California case has specifically adopted the Restatement rule quoted above, we find it accurately and succinctly describes California law.  We explain why below, and then we explain why we agree with the trial court's finding that, as alleged in the complaint, East Eagle repudiated the partnership agreement.

15

"While an actual breach of contract cannot occur until the time for performance has arrived, an anticipatory repudiation of the contract, or anticipatory breach, occurs before performance is due under the contract and results in a total breach." (*County of Solano v. Vallejo Redevelopment Agency*, *supra*, 75 Cal.App.4th at pp. 1275-1276; see *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.* (2014) 231 Cal.App.4th 1131, 1150 ["Repudiation of a contract, also known as 'anticipatory breach,' occurs when a party announces an intention not to perform prior to the time due for performance"].) As explained by our Supreme Court over a century ago in *Abbott v. 76 Land & Water Co.* (1911) 161 Cal. 42, a "repudiation" or a "total" breach of contract gives the other party "but a single cause of action, and this single cause of action [cannot] be so split as to afford warrant for two or more actions." (*Id*. at p. 47.) Although the law recognizes that "a continuous breach" of contract may "giv[e] rise to new causes of action as long as it continues," "[t]here can be no such thing in the case of the absolute repudiation . . . of a contract," because when a contract is repudiated, "there is a single breach, complete at the time of such repudiation, and a single and entire cause of action at once accrues." (*Id*. at pp. 48-49.)

Citing *Abbott*, our Supreme Court more recently reiterated in *Mycogen*, *supra*, 28 Cal.4th 888 that a total breach of contract "gives rise to a single cause of action in which all remedies based on that breach must be requested." (*Id*. at p. 906.) The plaintiff in *Mycogen* filed a lawsuit for declaratory relief regarding, and specific performance of, a licensing agreement. The trial court granted judgment in favor of the plaintiff, which, among other things, ordered the defendant to specifically perform the agreement. After this judgment was entered, the plaintiff filed a second lawsuit seeking damages for breach of the same agreement. The trial court entered judgment in favor of the plaintiff on the merits, and the defendant appealed, arguing res judicata barred the second lawsuit. The Court of Appeal agreed and reversed the judgment, and the Supreme Court granted review and affirmed the Court of Appeal. (*Id*. at p. 894-896.)

16

We are told that, in the Court of Appeal, the plaintiff argued res judicata did not bar the second lawsuit because the defendant committed a series of continuing or successive breaches of the agreement, and the second lawsuit only sought damages for breaches that occurred after the first lawsuit was filed (and we note this is similar to the argument Ghulam makes here). (*Mycogen*, *supra*, 28 Cal.4th at p. 896.) We are also told the Court of Appeal rejected this argument, finding there was just one " 'definitive breach' " and the plaintiff was required " 'to pursue all appropriate remedies . . . for the claimed breach of contract' " in the first lawsuit. (*Ibid.*)

In its appeal to the Supreme Court, however, the plaintiff "abandoned its continuing breach theory," and "does not contend in this appeal that [the defendant] committed a successive or continuous breach of the license agreement." (*Mycogen*, *supra*, 28 Cal.4th at p. 905 & fn. 10.) The court nonetheless stated it "agree[d] with the Court of Appeal that [the defendant's] nonperformance and conclusive repudiation of the license agreement in 1993 [before the first lawsuit was filed] constituted a total breach of contract." (*Id*. at p. 905, fn. 10.) And because "there was a single breach of contract when [the defendant] refused to negotiate licenses and repudiated the agreement," "[a]ll remedies requested by virtue of this breach must be requested in a single action or be forfeited." (*Id*. at p. 908.) The court thus concluded "both [lawsuits] were based on the violation of the same primary right, [the defendant's] breach of contract. Therefore, [the plaintiff's] second action . . . is barred under the doctrine of res judicata." (*Id*. at p. 909, fn. omitted.)

*Mycogen* thus supports the Restatement's rule that when a contract is *repudiated* and the plaintiff thereafter commences an action on that contract, "he is obliged . . . to claim all his damages with respect to the contract, prospective as well as past, and judgment in the action precludes any further action by the plaintiff for damages arising from the contract." (Rest.2d Judgments, § 26, com. g.) Or to paraphrase *Mycogen*, "a

[total] breach of contract gives rise to a single cause of action in which all remedies based on that breach must be requested." (*Mycogen*, *supra*, 28 Cal.4th at p. 906.)

The trial court found, based on the allegations in the complaint, that East Eagle repudiated the partnership agreement, Gelaman was thus required to bring all claims as a result of that repudiation in the first lawsuit, and Gelaman is barred by res judicata from bringing them in the current lawsuit. We agree.

"Repudiation of a contract . . . occurs when a party announces an intention not to perform prior to the time due for performance." (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, *supra*, 231 Cal.App.4th at p. 1150.) " 'A repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform [citations]; an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible [citations.]' " (*Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes* (2010) 191 Cal.App.4th 437, 463.)

Ghulam notes he does not expressly allege in the complaint that the partnership agreement was repudiated. This may be true, but it is not dispositive if he alleges facts that demonstrate the agreement was repudiated. And what he alleges is that in March 2016, after he informed Mohammad that his attorney was in the process of preparing documents to form a new LLC to operate the business, "Mohammad responded that he would not sign any new LLC documents because Ghulam was not his partner. Ghulam understood that this statement also meant that Mohammad's wife, Shakhofa[,] would not sign these documents either. *Mohammad further stated that if he or Gelaman wanted to buy back into the business and sign a new agreement, they would have to purchase those interests at fair market value*." (Italics added.) The next day, "Ghulam returned to East Market and Restaurant[] to find that all the locks had been changed," and an employee of the business "told Ghulam[] in a threatening tone that Mohammad had said he was not

18

allowed there and needed to leave the premises immediately." The trial court found these allegations demonstrated East Eagle repudiated the partnership agreement.

Ghulam argues the trial court erred in so finding. He notes these allegations all involve Mohammad and Ghulam, but the only two parties to the partnership agreement were East Eagle and Gelaman. In effect, he contends that nothing *Mohammad and Ghulam* could say or do could repudiate a contract between *East Eagle and Gelaman*. We disagree.

It is true that Mohammad was not a party to the partnership agreement — East Eagle was. It is also clear from the allegations in the present complaint, however, that Ghulam understood Mohammad spoke for and controlled East Eagle. The complaint alleges Mohammad informed Ghulam and Gelaman that "it was unnecessary to create a new limited liability company [to run the business] since *he* already operated an active limited liability company, East Eagle. Mohammad insisted *he* would simply add Ghulam and Gelaman to East Eagle." (Italics added.) It also alleges Mohammad later explained his wife, Shakhofa "was the owner of record of East Eagle in an effort to ensure that Mohammad remained eligible to receive the monthly $5,200.00 medical leave payments from his former employer" — in other words, Shakhofa was the owner in name only. The complaint goes on to detail Ghulam's interactions and dealings with Mohammad (not with Shakhofa), and Ghulam's requests that "*Mohammad* [not Shakhofa] add them as members to East Eagle." (Italics added.) Finally, the complaint alleges that when Mohammad stated he would not sign any new LLC documents, "Ghulam understand that this statement also meant that Mohammad's wife, Shakhofa, would not sign these documents either." These allegations make it clear that Ghulam understood Mohammad was authorized to speak and take action on behalf of East Eagle (and on behalf of his wife), and his statements and actions were thus attributable to East Eagle. We also note the prior lawsuit explicitly alleged Mohammad "owned and controlled" East Eagle, and when ruling on a demurrer, "[b]oth trial and appellate courts may properly take judicial

19

notice of a party's earlier pleadings," and "the plaintiff may not plead facts that contradict the facts . . . that the plaintiff pleaded in earlier actions." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877, italics omitted.) The allegations in both the present lawsuit and the prior lawsuit thus establish Mohammed spoke for, owned, and controlled East Eagle, and his statements and actions were attributable to East Eagle.

Ghulam also argues Mohammad's statement that "Ghulam was not his partner" could not be evidence of a repudiation of the partnership agreement, because Ghulam was not a party to that agreement and stating Ghulam was not Mohammad's or East Eagle's partner was thus simply a true statement of fact. This may be true, but it is not dispositive because even if we disregard this allegation, we find Mohammad repudiated the partnership agreement when he told Ghulam "if he or Gelaman wanted to buy back into the business and sign a new agreement, they would have to purchase those interests at fair market value." The partnership agreement created the business and specified East Eagle and Gelaman would jointly operate it and share profits and losses for at least five years. Stating Gelaman would have to pay fair market value to buy back into a business he already owned and further stating he would have to sign a new agreement in order to do so was a complete repudiation of the existing agreement. (See *Mammoth Lakes Land Acquisition, LLC v. Town of Mammoth Lakes*, *supra*, 191 Cal.App.4th at p. 463 [a party can repudiate a contract " 'by clearly and positively indicating, by words or conduct, that [he or she] . . . will not perform until additional conditions not in the contract are met' "].)

If there was any doubt about Mohammad's intentions, they were dispelled the next day when he changed the locks and instructed an employee not to let Ghulam into the business. To the extent Ghulam contends this lockout was irrelevant because he was not a party to the partnership agreement, we disagree. The partnership agreement required each partner to "provide their full time and overtime time services and best efforts on behalf of the partnership," and because Gelaman lived in the United Kingdom "and thus could not complete these requirements on his own behalf, Gelaman enlisted the support

20

of his brother to satisfy these requirements, with East Eagle's full knowledge and consent. Accordingly, Ghulam provided fulltime and overtime services to the partnership." By locking *Ghulam* out of the business, Mohammad thus made it impossible for *Gelaman* to perform under the agreement.

Once Mohammad (1) stated Gelaman would have to pay fair market value to buy back into a business he already owned, and (2) further stated Gelaman would have to sign a new agreement, and (3) made it impossible for Gelaman to perform under the partnership agreement, the partnership agreement was repudiated. And when Gelaman thereafter filed the first lawsuit for breach of that agreement, he was required "to claim all his damages with respect to the contract, prospective as well as past, and judgment in the [first] action precludes any further recovery by [him] for damages arising from the contract." (Rest.2d Judgments, § 26, com. g.) Moreover, the repudiation gave rise to several different types of remedies, and Gelaman thus could have, and should have, sought *all* of them in the first lawsuit, including prospective or future damages for breach of contract, an accounting of partnership monies, and the appointment of a receiver to take possession and control of all partnership assets and ensure all accounts were correctly settled. We thus conclude the second lawsuit is barred by res judicata.

## 4.    *Leave to Amend*

In the event we construe the allegations in the present complaint to establish repudiation (and we do), Ghulam requests leave to amend. It is unclear how he could amend the complaint to avoid the bar of res judicata. He states in a conclusory fashion that we should permit him to amend the complaint "to allege (1) that East Eagle did not repudiate the Partnership Agreement before the 2016 Action, and (2) East Eagle cited and relied upon the existence of the Partnership Agreement in its defense of the 2016 Action." That is the extent of his argument on the issue. He does not indicate precisely how he would amend the complaint and he does not provide us with a proposed amendment. "While abuse of discretion in sustaining a demurrer without leave to amend is reviewable

21

on appeal even in the absence of a request for leave to amend [citations] nevertheless, the burden of showing such abuse rests upon the appellant and a reviewing court should reverse only where there is manifest an abuse of discretion in refusing leave to amend. [Citations.]  Abuse of discretion is not shown where it is not indicated as to the manner in which it is proposed to amend nor the nature of the proposed amendment." (*Schultz v. Steinberg* (1960) 182 Cal.App.2d 135, 140-141.)  "To demonstrate an abuse of discretion, the burden is on the plaintiff to show there is a reasonable possibility that the proposed amendment will cure the defect [citation] by showing in what manner . . . the complaint can be amended and how that amendment will change the legal effect of the pleadings." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 444.)  Ghulam's failure to indicate how he would amend the complaint and how the amendment would avoid the bar of res judicata is reason in and of itself to deny leave to amend.  (*Ibid*. ["[Plaintiff] did not provide a proposed amendment to cure the faults of her second amended complaint and that omission alone supports the trial court's order denying leave to amend"].)

We also note Ghulam cannot avoid a demurrer on res judicata grounds simply by adding a conclusory allegation that "East Eagle did not repudiate the partnership agreement," because we ignore legal conclusions when ruling on a demurrer.  (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1337.)  Ghulam also cannot avoid a demurrer simply by omitting the factual allegations that demonstrate East Eagle repudiated the partnership agreement, because "allegations in an original pleading that rendered it vulnerable to demurrer or other attack cannot simply be omitted without explanation."  (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751.)  As noted above, "Both trial and appellate courts may properly take judicial notice of a party's earlier pleadings and positions as well as established facts from both the same case and other cases." (*Cantu v. Resolution Trust Corp.*, *supra*, 4 Cal.App.4th at p. 877.)  "A plaintiff may not avoid a demurrer by pleading facts or positions in an amended complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the

22

pleaded facts false. [Citation.] Likewise, the plaintiff may not plead facts that contradict the facts or positions that the plaintiff pleaded in earlier actions or suppress facts that prove the pleaded facts false." (*Ibid.*, italics omitted.) Ghulam has already alleged facts establishing East Eagle repudiated the agreement, and he may not now plead contradictory facts.

We also find Ghulam cannot avoid a demurrer on res judicata grounds by amending the complaint to allege "East Eagle cited and relied upon the existence of the Partnership Agreement in its defense of the 2016 Action." Ghulam's theory appears to be that, in the prior lawsuit, East Eagle made statements in three briefs that are inconsistent with its current argument that locking him out of the premises is evidence it repudiated the agreement. We disagree, and even if we agreed, Ghulam failed to raise this argument in the trial court, and thus cannot raise it for the first time on appeal. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117.) Ghulam also fails to explain in his opening brief how statements made in briefs filed in the prior lawsuit can change the legal effect of allegations made in both the prior and current lawsuits.[8]

On the merits, we note that all three briefs were filed before Gelaman was added as a plaintiff (i.e., they were filed before the third amended complaint was filed in the prior action). In all three briefs, East Eagle argued Ghulam lacked standing to sue for breach of contract because he was not a party to the partnership agreement. Ghulam fails

---

[8] In his reply brief he argues East Eagle should be judicially estopped from asserting it repudiated the partnership agreement, and he cites the rule that " '[j]udicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.' " (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) We need not, and do not, consider arguments raised for the first time in a reply brief. (See *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178 ["We generally do not consider arguments raised for the first time in a reply brief"]; *In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 256 [court need not consider argument that "was not clearly raised in these terms in defendant's opening brief, but instead was expressly made only in his reply brief"].)

23

to explain how this argument is inconsistent with arguing either that res judicata bars the second lawsuit or that East Eagle repudiated the partnership agreement before the first lawsuit was filed.

East Eagle also noted in two of the three briefs that the partnership agreement gave it the right to hire or dismiss any employee without Gelaman's consent, and it contended Ghulam "was, at best, an employee of the shop," his "employment was properly terminated upon the unilateral decision of East Eagle," and because it had the right to unilaterally terminate him, East Eagle also had the right "to unilaterally deny [him] access to the premises." Ghulam contends this argument demonstrates East Eagle's position in the first lawsuit was that the partnership agreement gave it the right to lock him out of the premises, which is inconsistent with its argument in this case that locking him out of the premises is evidence that East Eagle repudiated the agreement. We are not convinced the two positions are totally inconsistent, particularly where, as here, East Eagle made the first argument when Gelaman was not party to the litigation and it was trying to explain why Ghulam lacked standing to sue for breach of an agreement he was not a party to. Moreover, even if we were to agree East Eagle's statements are inconsistent with arguing the lockout is evidence of repudiation, Ghulam ignores the fact that the complaints in both lawsuits allege Mohammad stated Gelaman would have to pay fair market value to buy back into a business in which he was already a partner, and would have to sign a new agreement in order to do so. It is *this* statement that East Eagle contends "fully repudiated the Partnership Agreement," and we agree. Even without the subsequent lockout, Mohammad's statement constituted a repudiation.

Ghulam thus fails to convince us the trial court erred in denying leave to amend.

## DISPOSITION

The judgment is affirmed.  East Eagle shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                /s/

                                           EARL, P. J.


We concur:


    /s/

ROBIE, J.


    /s/

MAURO, J.